UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EPISODE 3, LLC d/b/a STRIVEPATH, A California limited liability company;<br><br>Plaintiff,<br><br>vs.<br><br>ADVANTAGE COLLEGE PLANNING, LLC, a North Carolina limited liability company; ADVANTAGE COLLEGE PLANNING FRANCHISING, INC., a North Carolina corporation; BROOKE DALY, an individual; and TRAVIS DALY, an individual;<br><br>Defendants. | **Case No.:**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

For its Complaint against defendants Advantage College Planning, LLC ("ACP"), Advantage College Planning Franchising, Inc. ("ACPF"), Brooke Daly, and Travis Daly (collectively "Defendants"), plaintiff Episode 3, LLC d/b/a StrivePath ("Plaintiff" or "StrivePath") states and alleges as follows:

**INTRODUCTION**

1. This is an action for trademark infringement, false designation of origin, unfair competition, cybersquatting, intentional use of a name to mislead the public, injury to business reputation, and dilution of a trademark arising out of a direct competitor's registration and use of nearly identical and confusingly similar trademarks and domain names.

2. Plaintiff's senior use in commerce of its STRIVEPATH trademark since June 12, 2024, predates and thus precludes under federal and state law Defendants' knowing, intentional and willful use of STRIVEPATH with identical services in the same market in the United States and via the Internet.

## PARTIES, JURISDICTION AND VENUE

3. Plaintiff is a limited liability company organized and existing under the laws of the State of California with its principal place of business in Orinda, California. Plaintiff operates a consulting and advisory company that provides college and academic advisory services for customers across the United States. Plaintiff promotes its services under its STRIVEPATH mark via the Internet at the domain name <mystrivepath.com>, and paid advertising on Yelp.

4. Upon information and belief, Defendant ACP is, and at all times relevant hereto was, a limited liability company organized and existing under the laws of the State of North Carolina, with its principal place of business at 8321 Bandford Way, Suite 001, Raleigh, North Carolina.

5. Upon information and belief, Defendant ACPF is, and all times relevant hereto was, a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business at 8321 Bandford Way, Suite 001, Raleigh, North Carolina.

6. Upon information and belief, Defendant Brooke Daly is, and at all times relevant hereto was an individual residing in the State of North Carolina. Also upon information and belief, at all times relevant hereto, Brooke Daly was and is the Chief Executive Officer of Defendants ACP and ACPF.

7. Upon information and belief, Defendant Travis Daly is, and at all times relevant hereto was an individual residing in the State of North Carolina. Also upon information and belief, at all times relevant hereto, Travis Daly was and is the Chief Technology Officer of Defendants ACP and ACPF.

8. Plaintiff is informed and believes and thereon alleges that Defendants, and each of

them, are and were at all times herein mentioned, the agents, servants, employees and/or joint venturers of each of the other Defendants, and at all times herein mentioned were acting within the course and scope of said agency, employment or joint venture.

9. This Court has subject matter jurisdiction under the Lanham Act, 15 U.S.C. § 1125 et seq., 28 U.S.C. § 1338(a) and the Anti-Cybersquatting Protection Act ("ACPA"), 15 U.S.C. § 1125(d). This Complaint also alleges violations of state law. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1338(b) and § 1367(a).

10. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claim arose, and Defendants are subject to personal jurisdiction in, this District.

11. This Court has personal jurisdiction over Defendants because Defendants, and each of them, have conducted business in the State of New York. Defendant conducts and advertises that business, among other ways, directly with consumers in the State of New York through a website located at https://advcp.com/.

## ALLEGATIONS COMMON TO ALL CLAIMS

12. Plaintiff is the owner of all rights in the trademark STRIVEPATH. Plaintiff was the first to use STRIVEPATH in commerce, on June 12, 2024 and Plaintiff has used the mark continuously in the United States in connection with academic and college counseling services since that date. Plaintiff's mark is registered on the Principal Register of the United States Patent and Trademark Office, bearing U.S. Registration Number 7745782. A true and accurate copy of the registration certificate for the STRIVEPATH mark is attached as Exhibit A.

13. Ownership of a federal trademark registration on the principal register is presumptive proof that the mark is valid, inherently distinctive, and was inherently distinctive as

of the date the mark was first used in commerce.

14. Plaintiff also is the owner of the domain name <mystrivepath.com>, which it first registered on June 11, 2024. Since June 12, 2024, Plaintiff has used <mystrivepath.com> featuring its STRIVEPATH trademark in connection with providing and promoting its academic and college counseling services.

15. Plaintiff was unable to register the domain name <strivepath.com> because, as of June 20, 2024, it was already under Defendants' ownership.

16. Upon information and belief, at all relevant times hereto, Defendants provided identical services primarily under their ADVANTAGE COLLEGE PLANNING mark.[1]

17. Upon information and belief, at all relevant times hereto, Defendants also entered into franchise agreements with third parties to provide academic and college counseling services under the ADVANTAGE COLLEGE PLANNING mark.

18. On or about July 3, 2023 Plaintiff entered into a franchise agreement with Defendant ACPF.

19. Plaintiff provided academic and college counseling services to consumers pursuant to the franchise agreement until it became clear that Defendants' business practices were not sufficient to sustain a franchisee/franchisor relationship.

20. Over the course of the franchisee/franchisor relationship, Plaintiff required capital expenditures in excess of $200,000, including franchise fees remitted to Defendant ACPF and identified several weaknesses in Defendants' franchise business model.

21. On or about June 7, 2024, Plaintiff prepared a presentation outlining the concerns

---

[1] Plaintiff notes that Defendants' mark is at least descriptive and at worst generic, as exemplified by the fact that Defendants registered a composite design mark (Reg. No. 4493420) with disclaimers for the terms "COLLEGE" and "PLANNING."

-4-

it had regarding Defendants' business practices, inaccurate disclosures made in its Franchise Disclosure Document, and model in an effort to demonstrate reasonable grounds to terminate the franchise agreement.

22. On June 12, 2024, Plaintiff and Defendant ACPF entered into a confidential mutual termination agreement and the franchise agreement was terminated effective June 21, 2024.

23. The mutual termination agreement provided that Plaintiff would have until June 21, 2024 to transition to an independent entity providing services under a name and marks unrelated to Defendants.

24. Also on June 12, 2024, ahead of the deadline provided for in the mutual termination agreement, Plaintiff began conducting its business under the STRIVEPATH mark.

25. Plaintiff's intention to conduct business separate from Defendants under the STRIVEPATH mark was not a secret. During the transition period, and at least six days before Defendants purchased the domain <strivepath.com>, Plaintiff sent several emails from a server owned, operated, or otherwise controlled by Defendants where his intentions and intended mark were made clear.

26. Upon information and belief, Defendants intercepted or otherwise had access to those emails and were well aware of Plaintiff's intended use of the STRIVEPATH mark in advance of June 20, 2024.

27. On June 20, 2024, Defendants registered the domain name <strivepath.com> (the "Infringing Domain") for the explicit purpose of depriving Plaintiff of the domain name. Upon information and belief, Defendants paid an unreasonably high fee to acquire the domain despite having no intent to use the domain for legitimate business purposes.

28. On July 2, 2024, Plaintiff filed an application to register STRIVEPATH as a trademark with the USPTO.

29. On or about January 21, 2025, Defendants caused the Infringing Domain to be redirected to one of Defendants' own websites, [https://advcp.com/virtual-consulting](https://advcp.com/virtual-consulting).

30. This redirection went into effect immediately prior to Plaintiff's January 21 and 22, 2025 events marketing its services and was done for the express purpose of redirecting consumers to Defendants' own competing services.

31. At approximately the same time, Defendants caused their "green check mark" mark to be associated with internet search results for STRIVEPATH.COM, including results for domain at <strivepath.com>.

32. The January events were widely advertised on social media, in electronic newsletters, and on Plaintiff's website at <mystrivepath.com>. Upon information and belief, Defendants knew of the advertised marketing event.

33. The website redirect stayed active through the remainder of the month of January, by far Plaintiff's busiest month to date.

34. Over 200 potential customers attended the January 21 event. Due to rules put in place by the event organizers, Plaintiff was unable to share its legitimate domain name. As a result, attendees and other potential customers would be required to perform an internet search for Plaintiff's business operating under the STRIVEPATH name and mark.

35. Upon information and belief, a significant number of customers encountered the Infringing Domain, the redirection to Defendants' websites, and therefore it Defendants' services.

36. Upon information and belief, an unknown number of customers contracted with

Defendants for the provision of services identical to Plaintiff's based on Defendants' intentional, willful, deceit.

37. Upon discovering the redirect and Defendants' ownership of the domain on February 4, 2025, Plaintiff contacted Defendants Brooke Daly and Travis Daly and objected to the redirect.

38. Six minutes after Plaintiff contacted Defendants Brooke Daly and Travis Daly, the redirect was deactivated.

39. The Plaintiff raised this issue with the Independent Educational Consultants Association, the largest professional organization of independent educational consultants and requested that they conduct an investigation.

40. The investigation confirmed that the CTO purchased the domain. Defendants admitted as such to investigators and committed to issuing a written apology to Plaintiff for their conduct.

41. Instead of issuing any apology, subsequent to deactivating the original redirect, Defendants put the domain up for sale for $11,000, over four times what they purchased it for on June 20, 2024.

42. Subsequent to deactivating the original redirect and in advance of another of the plaintiff's highly publicized event taking place on or around March 20, 2025, Defendants once again put in place a redirect involving the Infringing Domain, this time to <strive.org> a website for what appears to be a charitable organization that offers educational and training services.

43. This second redirect remained active until at least April 11, 2025, when Plaintiff, through its undersigned counsel, demanded that the redirect cease and that the Infringing Domain be surrendered to Plaintiff.

44. At some time subsequent to transmitting the demand letter, the redirect ceased. Defendants did not surrender the domain, and instead provided the demand letter and details of the confidential mutual termination agreement between Plaintiff and Defendants to an attorney who represents an as-yet unidentified third party.

45. Subsequent to Defendants' receipt of the April 11, 2025 demand letter, Defendants intentionally deleted or directed the deletion of all records of changes to the Infringing Domain from Wayback Machine, an internet database that archives historical website data. Upon information and belief, this intentional deletion was performed for the explicit purpose of destroying evidence crucial to Plaintiff's claims.

46. Further to Defendants' bad faith attempts to destroy evidence or conceal their unlawful acts, they ceased attempting to sell the Infringing Domain for a vastly inflated sum. Subsequent to Defendants' receipt of the April 11, 2025 demand letter, Defendants relisted the Infringing Domain for sale for the same sum they paid to acquire it.

### FIRST CLAIM FOR RELIEF
**Trademark Infringement**
**(15 U.S.C. § 1125(a))**
**(Against All Defendants)**

47. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

48. Plaintiff's registered trademark for STRIVEPATH ULTIMATE WINDOW TINTING trademark has become distinctive of Plaintiff as a source of quality goods and services and has acquired secondary meaning. Plaintiff owns common law trademark rights in ULTIMATE WINDOW TINTING and the mark is protectable under 15 U.S.C. § 1125(a) and under common law.

49. At all relevant times hereto, Defendants used and/or are using ULTIMATE TINT

and the Infringing Domain in competition with Plaintiff in commerce, and such use is likely to cause confusion, or to cause mistake, or to deceive.

50. Defendants' acts of trademark infringement were undertaken with knowledge of Plaintiff's mark and have been willful, deliberate and in bad faith.

51. Defendants' acts of trademark infringement have proximately caused damage to Plaintiff in an amount to be determined at trial, but not less than the maximum statutory damages, with enhancements for Defendants' willful, bad faith conduct.

## SECOND CLAIM FOR RELIEF
### False Designation of Origin and Unfair Competition
### (15 U.S.C. § 1125(a))
### (Against All Defendants)

52. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

53. Defendants have been using STRIVEPATH and the Infringing Domain in connection with their sale offer for sale and advertising of academic and college counseling. STRIVEPATH and the Infringing Domain are identical or confusingly similar to Plaintiff's registered STRIVEPATH mark.

54. Defendants' use of STRIVEPATH, the Infringing Domain, and their efforts to cause their "green check mark" trademark to be associated with Plaintiff and Plaintiff's website constitute a false designation of origin that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants' business with another person, or as to the origin, sponsorship, or approval of their goods, services or commercial activities by another person, in violation of 15 U.S.C. § 1125(a).

55. Defendants conduct their use of STRIVEPATH and the Infringing Domain in commerce without authorization or consent by Plaintiff. Defendants' conduct is intended to

divert, and likely will divert, potential customers away from Plaintiff.

56. Plaintiff has no control over the nature and quality of the services that may be provided by Defendants.

57. Defendants' infringement of Plaintiff's mark, especially in connection with services identical to those of Plaintiff, dilutes and devalues Plaintiff's mark.

58. Defendant's use of STRIVEPATH and the Infringing Domain in connection with their sale offer for sale and advertising of competing services with knowledge of Plaintiff's trademark rights renders Defendants' trademark infringement willful, deliberate, and in bad faith.

59. Defendants' acts of trademark infringement have proximately caused damage to Plaintiff in an amount to be determined at trial, but not less than the maximum statutory damages, with enhancements for Defendants' willful, bad faith conduct.

**THIRD CLAIM FOR RELIEF**
**Cybersquatting**
**(15 U.S.C. § 1125(d))**
**(Against all Defendants)**

60. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

61. Plaintiff is the owner of all right, title and interest in STRIVEPATH.

62. The Infringing Domain, <strivepath.com>, is identical or confusingly similar to Plaintiff's mark.

63. Defendants' use of the Infringing Domain at all times has been an intentional and willful attempt to profit in bad faith from Plaintiff's mark. Defendants have no trademark rights in Plaintiff's mark or the Infringing Domain, and Plaintiff deliberately selected the Infringing Domain in order to cause initial interest confusion for commercial gain in direct competition with Plaintiff's offering of identical goods and services. At all times, Defendants knew that such

conduct was in direct competition with Plaintiff and was not fair use or otherwise lawful.

64. As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to the following relief: (a) transfer of the Infringing Domain to Plaintiff; (b) damages consisting of Defendants' wrongful profits in amounts to be proven at trial; and (c) maximum statutory damages of $100,000.00. Plaintiff also seeks an award of its reasonable attorneys' fees and costs under the "exceptional" case provision of the Lanham Act, 28 U.S.C. § 1117(a).

### FOURTH CLAIM FOR RELIEF
### (Common Law Unfair Competition)
### (Against All Defendants)

65. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

66. Defendants' actions constitute unfair competition under applicable state common law, in that STRIVEPATH and the Infringing Domain are deceptively similar to Plaintiff's mark and Plaintiff's domain names and Defendants' use of STRIVEPATH and the Infringing Domain is creating or increasing confusion between goods and services provided by Plaintiff and Defendants, to the detriment of Plaintiff and the public.

67. Defendants' use of STRIVEPATH and the Infringing Domain is likely to mislead consumers as to the separate origin of related goods and services and to damage Plaintiff's goodwill and business reputation.

68. Defendants' actions regarding STRIVEPATH and the Infringing Domain were willful, intentional, and in bad faith.

69. As a direct and proximate result of Defendants' conduct, as hereinabove alleged, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
### Intentional Use Of A Name To Mislead The Public

**(N.Y. Gen. Bus. Law § 133)**
**(Against All Defendants)**

70. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

71. Defendants continued ownership of the domain <strivepath.com> and the likelihood of future redirects or other unlawful use in commerce is likely to deceive or mislead the public as to defendant's connection to or endorsement by plaintiff.

### SIXTH CLAIM FOR RELIEF
**Injury To Business Reputation and Dilution**
**(N.Y. Gen. Bus. Law § 360-L)**
**(Against All Defendants)**

72. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

73. Defendants continued ownership of the domain <strivepath.com> and the likelihood of future redirects or other unlawful actions are likely to damage Plaintiff's business reputation and damage the distinctive character of Plaintiff's STRIVEPATH mark.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

74. Awarding Plaintiff damages consistent with the law in an amount to be determined at trial but not less than $450,000.00, such damages to be trebled by the court for Defendants' willful, bad faith conduct, including but not limited to the spoliation of evidence;

75. Awarding Plaintiff maximum statutory damages under 15 U.S.C. § 1117(d), of $100,000.00;

76. Awarding exemplary damages in an amount to be determined by a jury;

77. Awarding plaintiff his costs of suit, attorneys' fees, and reasonable expenses in

this exceptional case;

78. Permanently enjoining Defendants, and their officers, agents, employees, successors, transferees, assignees, heirs, parent companies, subsidiaries, and affiliates, from (i) using the STRIVEPATH mark and the Infringing Domain; (ii) engaging in false and misleading advertising in connection with their sale of competing goods and services; and (iii) engaging in deceptive or unfair trade practices;

79. Directing Defendants to transfer to Plaintiff the Infringing Domain; and

80. Awarding such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully demands a jury trial on all appropriate issues pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: New York, New York
       May 5, 2025

Respectfully submitted,

**GREENSPOON MARDER LLP**
*Counsel for Plaintiff*

Brian A. Bloom, Esq.
Brian.Bloom@gmlaw.com
1345 Avenue of the Americas, Suite 2200
New York, New York 10105
Tel: (212) 524-5000
Fax: (212) 524-5050

Gavin M. Strube, Esq.
Gavin.Strube@gmlaw.com
1345 Avenue of the Americas, Suite 2200
New York, New York 10105
Tel: (212) 524-5000
Fax: (212) 524-5050