UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
EPISODE 3, LLC d/b/a STRIVEPATH,

                    Plaintiff,

                                       25-cv-3745 (PKC)

        -against-                        OPINION AND ORDER

ADVANTAGE COLLEGE PLANNING, LLC,
ADVANTAGE COLLEGE PLANNING
FRANCHISING, INC., BROOKE DALY, and
TRAVIS DALY,

                    Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Episode 3, LLC ("StrivePath") is a California limited liability company that offers college and academic consulting services. StrivePath alleges that defendants, businesses and individuals based in North Carolina, infringed on the StrivePath trademark by acquiring a website domain name containing StrivePath's mark and using it to reroute potential customers to defendants' own website. StrivePath brings claims of trademark infringement, false designation of origin and unfair competition, and cybersquatting under the Lanham Act, 15 U.S.C. § 1125, as well as claims of unfair competition, intentional use of a name to mislead the public, and injury to business reputation and dilution under New York common law and New York's General Business Law.

        Defendants Advantage College Planning, LLC ("ACP"), Advantage College Planning Franchising, Inc. ("ACPF"), Brooke Daly and Travis Daly move to dismiss the First Amended Complaint (the "Complaint"), citing the absence of personal jurisdiction and improper

venue.  Defendants primarily argue that there is no basis for the exercise of personal jurisdiction over them either on the grounds of general jurisdiction or under New York's long-arm statute, N.Y. C.P.L.R. § 302(a).  Defendants move in the alternative for transfer of the action to the District Court for the Eastern District of North Carolina.

For reasons that will be explained, defendants' motion will be granted to the extent that defendants assert lack of personal jurisdiction and otherwise denied.

BACKGROUND.

Plaintiff StrivePath is a limited liability company organized under the laws of California with its principal place of business in California.  (Compl't ¶ 3.)  Defendants ACP and ACPF are a limited liability company and corporation, respectively, organized under the laws of North Carolina and which have their principal places of business in North Carolina.  (Id. ¶¶ 4–5.)  StrivePath, ACP and ACPF are engaged in the business of providing college and academic consulting and advisory services.  (Id. ¶¶ 3, 22.)  Defendant Brooke Daly is the Chief Executive Officer of both ACP and ACPF and defendant Travis Daly is the Chief Technology Officer of ACPF.  (Id. ¶¶ 6–7; ECF 42, T. Daly Decl. ¶ 2.)  Both Brooke Daly and Travis Daly (the "Daly defendants") are residents of North Carolina.  (Compl't ¶¶ 6–7.)  Defendants maintained multiple websites advertising their services, and until at least June 2025, one of defendants' websites listed a business location in Buffalo, New York.  (Id. ¶¶ 9, 11.)

Starting in July 2023, StrivePath operated as a franchisee of ACPF.  (Id. ¶ 24.)  In June 2024, the parties mutually agreed to terminate the franchise agreement because of disagreements over the operation of the franchise.  (Id. ¶¶ 25–28.)  Thereafter, StrivePath began to operate its business under its "STRIVEPATH" mark, and it applied to register the mark with

the U.S. Patent and Trademark Office in July 2024.  (Id. ¶¶ 30, 34.)  On June 20, 2024, defendants registered the domain name "strivepath.com" (the "Infringing Website") and, starting in January 2025, caused traffic to that site to be redirected to defendants' own website.  (Id. ¶¶ 33, 35.)  StrivePath alleges that this redirection of website traffic caused some customers to contract for the defendants' services instead of those offered by StrivePath.  (Id. ¶¶ 39–42.)  On February 4, 2025, StrivePath contacted the Daly defendants and objected to the redirect, and the redirect was promptly deactivated.  (Id. ¶¶ 43–44.)  However, some time before March 20, 2025, defendants again caused traffic to be redirected from the strivepath.com site, this time to a website associated with a charitable organization apparently unrelated to the parties.  (Id. ¶ 48.)  That redirection ended sometime after April 11, 2025.  (Id. ¶ 49.)

Thereafter, StrivePath filed this action.  The Complaint asserts claims of trademark infringement under 15 U.S.C. § 1125(a), false designation of origin and unfair competition under 15 U.S.C. § 1125(a), cybersquatting under 15 U.S.C. § 1125(d), unfair competition under New York common law, intentional use of a name to mislead the public under New York General Business Law § 133, and injury to business reputation and dilution under New York General Business Law § 360-L.  (Id. ¶¶ 54–80.)  The Complaint seeks injunctive relief and damages.  (Id. ¶¶ 81–86.)

Defendants have moved to dismiss the Complaint under Rule 12(b)(2), Fed. R. Civ. P., arguing that they are not subject to personal jurisdiction in New York.  Defendants also seek dismissal on the basis of Rule 12(b)(3), asserting that the Southern District of New York is an improper venue for this action.  Finally, defendants urge, alternatively, that the Court should exercise its discretion to transfer the case to the Eastern District of North Carolina.

RULE 12(b)(2) STANDARD.

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010). "'In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists.'" Id. (quoting Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006)). This showing includes factual allegations that, if credited, establish jurisdiction over the defendant. Id. The showing also can be made through a plaintiff's "own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010) (quotation marks omitted) (quoting Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001)). However, the Court should "not draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (quotation marks omitted). A Court has "considerable procedural leeway" on a Rule 12(b)(2) motion and may decide it on the basis of affidavits alone, permit discovery in aid of the motion, or conduct an evidentiary hearing. Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84 (2d Cir. 2013).

DISCUSSION.

I.   The Court Lacks Personal Jurisdiction Over Defendants.

"To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, the Court must engage in a two-step analysis." Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010) (citing Best Van Lines, Inc. v. Walker, 490 F.3d 239, 243–44 (2d Cir. 2007)). First, the Court must apply the forum state's long-arm statute. Id.

Second, "[i]f the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." Id. at 164.

    A.  General Personal Jurisdiction Over Defendants.

Before addressing the long-arm statute, the Court notes that in its opposition to the motion StrivePath asserts that "[a] court may exercise personal jurisdiction over a foreign corporation based on general business operations within the forum state," citing two cases.[1] (ECF 45 at 12.)  Accordingly, the Court will first address whether there is a basis for general jurisdiction over any defendant.

An entity defendant may be subject to general jurisdiction under N.Y. C.P.L.R. § 301 when the defendant "has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted." Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 224 (2d Cir. 2014) (internal quotation marks and brackets omitted) (quoting Landoil Res. Corp. v. Alexander & Alexander Servs., 77 N.Y.2d 28, 33 (1990)).  The exercise of general personal jurisdiction over a defendant satisfies due process only when the defendant is "essentially at home in the forum State." Id. at 225 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).

Because StrivePath does not dispute that ACP and ACPF have their primary places of business in and are organized under the laws of North Carolina, there is no basis for the Court to exercise general personal jurisdiction over the entity defendants consistent with due process.  See Chen v. Dunkin' Brands, Inc., 954 F.3d 492, 498 (2d Cir. 2020) ("[A] corporate

---

[1] See ECF 45 at 12 (citing Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 571 (2d Cir. 1996); Peters Griffin Woodward, Inc. v. Roadrunner Television Ltd. Partnership, 545 F. Supp. 288, 289–92 (S.D.N.Y. 1982) (Duffy, J.)).

defendant may be treated as essentially at home only where it is incorporated or maintains its principal place of business." (quoting Brown v. Lockheed Martin Corp., 814 F.3d 619, 627 (2d Cir. 2016))); Exhibition Emps. Loc. 829 I.A.T.S.E Pension Fund v. National Convention Servs., LLC, 24-cv-07833 (MKV), 2025 WL 2253741, at *2 (S.D.N.Y. Aug. 7, 2025) (Vyskocil, J.) (analyzing whether the court had general personal jurisdiction over an LLC defendant based on the LLC's state of organization and principal place of business).

The allegation that ACP and ACPF purportedly operated a business location in Buffalo, New York, standing alone, is insufficient to permit the Court to exercise general personal jurisdiction over those defendants consistent with due process.[2] See Gucci Am., Inc. v. Li, 768 F.3d 122, 135 (2d Cir. 2014).

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (quoting Goodyear, 564 U.S. at 924). Brooke Daly and Travis Daly have submitted declarations that assert that they "reside" in North Carolina, do not own "any property or assets" in New York and do not regularly travel to New York for any purpose. (ECF 41, B. Daly Decl. ¶¶ 1, 10; ECF 42, T. Daly Decl. ¶ 1.) While the declarations may be insufficient to establish a North Carolina domicile, the factual assertions foreclose the possibility that they are domiciled in New York. No facts have been alleged that would support the exercise of general jurisdiction over the individual defendants.

B.  Personal Jurisdiction Under New York's Long-Arm Statute.

Turning to the long-arm statute, StrivePath asserts that the Court has specific personal jurisdiction over defendants under N.Y. C.P.L.R. § 302(a)(1), which provides that "a

---

[2] Per defendants, the Buffalo operation was a franchise that ceased operations on or about October 30, 2024, which was before the commencement of this action. (ECF 41, B. Daly Decl. ¶ 10.)

court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." To establish personal jurisdiction under section 302(a)(1), a plaintiff must meet two requirements: "(1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 168 (2d Cir. 2015) (quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 168 (2d Cir. 2013)).

Under the first prong of the section 302(a)(1) inquiry, a defendant is deemed to have "transacted business" if it engaged in "purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Spetner v. Palestine Inv. Bank, 70 F.4th 632, 639 (2d Cir. 2023) (quoting Best Van Lines, 490 F.3d at 246). "[S]ection 302 is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Chloé, 616 F.3d at 170 (internal quotation marks omitted) (quoting Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467 (1988)).

As to the second prong, New York courts deem a plaintiff's claims to "arise from" a defendant's business activities within New York when there is "an articulable nexus or substantial relationship between the business transaction and the claim asserted." Licci v. Lebanese Canadian Bank, SAL, 20 N.Y.3d 327, 339 (2012) (internal quotation marks and citations omitted). This inquiry is "relatively permissive" and "causation is not required," but "at a minimum" there must be "a relatedness between the transaction and the legal claim such that

the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." Id. (citations omitted). Section 302(a)(1) "requires only that at least one element of the claim arises from defendant's New York contacts." Spetner, 70 F.4th at 643 (quoting Licci, 20 N.Y.3d 327, 341) (internal quotation marks and brackets omitted).

StrivePath primarily relies on (1) defendants' operation of websites that advertised their business to New York residents and (2) defendants' purported operation of a location in Buffalo, New York. Also, StrivePath alludes to other contacts to support the Court's exercise of jurisdiction, including the registration of the StrivePath domain name and redirection of web traffic, including that from New Yorkers, to defendants' website; defendants' cultivation of business relationships with colleges and universities located in New York; and defendants' provision of consulting services to New York residents. (Compl't ¶¶ 9–13, 17; ECF 45 at 3, 6–8.) As will be explained, none of these purported activities support the Court's exercise of personal jurisdiction over the defendants.

In its Complaint, StrivePath attributes the allegedly illegal actions underlying its claims to all defendants. StrivePath argues that ACP and ACPF acted as agents of the Daly defendants, that the Daly defendants directly participated in the actions underlying the claims, and that defendants acted as a unified entity. (See Compl't ¶ 8; ECF 44, Grewal Decl. ¶¶ 6–24.) For purposes of this motion, StrivePath has adequately alleged and presented facts that support the conclusion that actions ascribed to ACP and ACPF were taken "for the benefit of and with the knowledge and consent of" the Daly defendants and that the Daly defendants "exercised some control over" ACP and ACPF, such that the activities of ACP and ACPF can be attributed to the Daly defendants. Am./Int'l 1994 Venture v. Mau, 146 A.D.3d 40, 54 (2d Dep't 2016) (quoting Kreutter, 71 N.Y.2d at 467); see also Spetner, 70 F.4th at 640 ("To exercise personal

jurisdiction over a defendant based on the acts of an agent, a showing must be made that 'the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal.'" (quoting Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 85 (2d Cir. 2018))).

The Court now turns to the facts relied upon by StrivePath to support personal jurisdiction under section 302(a)(1).

1. Defendants' Websites Do Not Support The Exercise of Personal Jurisdiction.

StrivePath asserts that defendants transacted business in New York on the basis of websites operated by defendants. Specifically, the Complaint alleges that "Defendants maintain multiple websites advertising their business and services to residents of the United States, including residents of the State of New York" and that "Defendant[s] conduct[] and advertise[] that business, among other ways, directly with consumers in the State of New York through a website located at https://advcp.com/." (Compl't ¶¶ 9, 17.) According to the Complaint, defendants also "listed a business location in Buffalo, New York on one of their websites." (Id. ¶ 11.) The founder and managing member of StrivePath, Gurpartap "Sunny" Grewal, avers in a declaration submitted with StrivePath's briefing in opposition to the motion to dismiss that the webpage advertising the Buffalo location was accessible from the homepage of ACP's website. (ECF 44, Grewal Decl. ¶¶ 25–29.)

When a defendant is alleged to have "transacted business" through a website, courts examine the degree of interactivity of the website because it bears upon whether the defendant conducted purposeful activity in the state. See Best Van Lines, Inc. v. Walker, 490 F.3d 239, 252 (2d Cir. 2007) ("[A] website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide whether the defendant

'transacts any business' in New York."). A website that merely provides information that may be accessed by individuals in New York is not grounds for the exercise of personal jurisdiction. See Allstar Mktg. Grp. LLC v. andnov73, 20-cv-9069 (PKC), 2023 WL 5208008, at *2 (S.D.N.Y. Aug. 14, 2023). "By contrast, an interactive website [that] permits the exchange of information between users in another state and the defendant . . . may be a basis for jurisdiction." Id. (internal quotation marks omitted) (quoting Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000) (Sweet, J.)). Interactive websites "used by New York consumers to purchase an out-of-state defendant's products . . . generally confer personal jurisdiction." Energy Brands Inc. v. Spiritual Brands, Inc., 571 F. Supp. 2d 458, 466 (S.D.N.Y. 2008) (Chin, J.).

The Complaint does not allege and StrivePath does not otherwise present any evidence that defendants' websites were interactive or allowed users to exchange information with the defendants. Instead, the Complaint merely alleges that defendants' websites "advertis[e] their business and services to residents of the United States, including residents of the State of New York." (Compl't ¶ 9.) That New York residents can access a website containing information about the defendants and their business, without more, is insufficient to establish that the defendants "transact[] any business" in New York under section 302(a)(1). See Creative Photographers, Inc. v. Grupo Televisa, S.A.B., 763 F. Supp. 3d 618, 633 (S.D.N.Y. 2025) (Liman, J.) ("'Passive' websites, which merely make information available to viewers, have been analogized to an advertisement in a nationally-available magazine or newspapers, and do not without more justify the exercise of jurisdiction over the defendant." (internal quotation marks omitted)); Minden Pictures, Inc. v. Grupo Televisa, S.A.B., 738 F. Supp. 3d 458, 465 (S.D.N.Y. 2024) (Rakoff, J.) (websites did not subject defendants to personal jurisdiction under

section 302(a)(1) "[b]ecause there are no . . . allegations that the websites are interactive . . . ."); Sullivan v. Ringling Coll. of Art & Design, Inc., 19-cv-1302 (RA), 2019 WL 6529823, at *4 (S.D.N.Y. Dec. 4, 2019) (Abrams, J.) ("The fact that New York residents can access an educational institution's website . . . is alone insufficient to confer personal jurisdiction.").

The fact that ACP's website contained a webpage listing the location of the Buffalo franchise, among other locations in Maine, Florida and North Carolina, does not render defendants subject to personal jurisdiction. (ECF 44, Grewal Decl. ¶ 28.) StrivePath, in pointing to the listing of the Buffalo location on ACP's website, argues that ACP is holding itself out as conducting business in New York. But again the touchstone for the applicability of section 302(a)(1) in this context is whether the defendants' website allowed the exchange of information with New York residents, such that there was some purposeful activity directed at the forum state. There is no allegation in the Complaint or in the materials submitted with StrivePath's briefing that the "Locations" webpage could be used to facilitate any exchange of information or business transactions between website visitors and the Buffalo location. Thus, ACP's listing of the Buffalo location on its website does not support that defendants "transacted business" in New York under section 302(a)(1).

Even if StrivePath had alleged that defendants' websites had some interactive feature, its assertion that the Court may exercise personal jurisdiction over defendants on the basis of the websites would still fail. Courts in the Second Circuit deem a defendant to have "transacted business" in New York through its website if New York residents actually used the website's interactive features to initiate some transaction with the defendant. See Creative Photographers, 763 F. Supp. 3d at 633 (failure by plaintiff to allege that website was used to make a sale in New York was "fatal" to court's exercise of personal jurisdiction (quoting

Royalty Network Inc. v. Dishant.com, LLC, 638 F. Supp. 2d 410, 420 (S.D.N.Y. 2009) (Stein,

J.))); A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines, 828 F. Supp. 2d 557, 570 (E.D.N.Y.

2011) (Spatt, J.) ("The Defendant is not alleged to have sold goods or services in New York

through its website, and the Plaintiff has not alleged any facts from which it could be rationally

inferred that the Defendant is soliciting New York residents to use its . . . services via its

website."); Royalty Network, 638 F. Supp. 2d at 420 (plaintiff offered "no evidence that any

New York resident actually engaged in any . . . transactions [on the defendant's website] or that

defendants did anything to indicate their knowing and purposeful transaction with New York

visitors"); see also Am. Girl, LLC v. Zembrka, 118 F.4th 271, 278 (2d Cir. 2024) ("Section

302(a)(1) . . . requires a transaction."). All that StrivePath offers is the conclusory allegation that

defendants "conduct[] . . . business . . . directly with consumers in the State of New York through

a website located at https://advcp.com/." (Compl't ¶ 17.) Even if the Court had a basis to

suppose that there was some interactive element to the website, StrivePath's position would still

fail because it makes no non-conclusory allegation that any New York residents transacted any

business with defendants through an interactive feature on defendants' websites. See Alki

Partners, L.P. v. Vatas Holding GmbH, 769 F. Supp. 2d 478, 487 (S.D.N.Y. 2011) (Batts, J.),

aff'd sub nom. Alki Partners, L.P. v. Windhorst, 472 F. App'x 7 (2d Cir. 2012) ("Conclusory

allegations lacking factual specificity . . . do not satisfy plaintiff's burden" of establishing that

personal jurisdiction is proper (citing Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184–86 (2d

Cir. 1998))).

   Because StrivePath fails to plausibly allege that defendants transacted business in

New York through their websites, the websites cannot support the Court's exercise of personal

jurisdiction over the defendants.

2. The Buffalo "Location" Does Not Support the
<u>Exercise of Personal Jurisdiction.</u>

As an alternative basis for the Court's exercise of personal jurisdiction over defendants, the Complaint alleges that "Defendants maintained a business location in Buffalo, New York and operated their business within the borders of the State of New York." (Compl't ¶ 12.) The parties dispute the nature of the operation of the Buffalo location. Defendants have come forward with a declaration attesting that the Buffalo location was a franchise of ACPF that was owned and operated independently of ACP and ACPF. (ECF 41, B. Daly Decl. ¶ 10.) Grewal attests that, based on his own experience as a former ACPF franchisee, ACPF exercised substantial control over and closely monitored its franchisees' operations, such that Grewal considered his own franchise as a "de facto . . . branch of ACPF." (ECF 44, Grewal Decl. ¶¶ 6– 16.) Resolving all factual disputes in favor of StrivePath, as it must at this stage, the Court concludes that defendants, through the Buffalo location, "transacted business" in New York in satisfaction of the first prong of the section 302(a)(1) inquiry.

Nonetheless, StrivePath fails to articulate any relationship between the activities at the Buffalo location and its claims. All of StrivePath's claims arise from defendants' alleged registration of the infringing strivepath.com domain name and redirection of web traffic to defendants' own website from January to February 2025 and again from March to April 2025.[3] But the Complaint and StrivePath's submissions make no effort to tie this course of conduct to the Buffalo location. To the contrary, StrivePath repeatedly emphasizes that the Daly defendants alone exercised control over the Infringing Website and ACP and ACPF's websites. (Compl't ¶¶ 43–44; ECF 44, Grewal Decl. ¶¶ 22–24.) StrivePath does not dispute that the Daly defendants

---

[3] Because all of StrivePath's claims at their core are premised upon the same alleged conduct, the Court analyzes whether the "arises from" prong is satisfied for all of StrivePath's claims together.

resided in North Carolina and did not personally conduct business related to the Buffalo location in New York, that ACP and ACPF have no employees in New York, or that the strivepath.com domain was maintained in North Carolina. (ECF 41, B. Daly Decl. ¶¶ 1, 6, 10, 12; ECF 42, T. Daly Decl. ¶¶ 1, 8.) Nor does StrivePath dispute that the Buffalo location ceased operations in October 2024, before the redirect took place. (ECF 41, B. Daly Decl. ¶ 10.) And while StrivePath need not allege a causal relationship between activities at the Buffalo location and the purchase of the strivepath.com domain name and redirection of web traffic to defendants' website, StrivePath does not articulate any relation between them at all. See Licci, 20 NY.3d at 339. Thus, the mere existence of the Buffalo location does not suffice for the Court to exercise personal jurisdiction over defendants under section 302(a)(1). See Wahlhuetter v. CollegeHumor.com, LLC, 19-cv-1501 (LGS) (BCM), 2021 WL 6205506, at *6 (S.D.N.Y. Nov. 29, 2021), report and recommendation adopted, 2022 WL 19701 (S.D.N.Y. Jan. 3, 2022) (no personal jurisdiction over defendant that had place of business in New York because "plaintiff makes no claim that the [alleged infringing activity occurred] in New York, that the infringement was directed or committed by any of defendant's New York-based personnel, or that the claim otherwise arose out of any of the – unspecified – business activities that defendant conducted in New York."); Corley v. Vance, 15-cv-1800 (KPF), 2019 WL 3841939, at *5 (S.D.N.Y. Aug. 15, 2019) (Failla, J.) (no personal jurisdiction over defendant with New York office because "[t]he Complaint contains no allegations that [the defendant] has engaged in any conduct in New York giving rise to a cause of action against it.").

        3.  StrivePath's Other Proposed Bases for
            Exercising Personal Jurisdiction Fail.

In its opposition to defendants' motion to dismiss, StrivePath catalogues other activities that it argues individually or collectively support the exercise personal jurisdiction over

defendants.  The Court addresses each in turn and concludes that none alone or in tandem support the exercise of specific personal jurisdiction over defendants.

First, StrivePath argues that defendants' redirection of web traffic from the strivepath.com domain to their own website—the purportedly unlawful conduct underlying StrivePath's claims in this suit—subjects defendants to personal jurisdiction in this Court.  The Complaint alleges that New York residents were affected by the redirection, and that an "unknown number" of New York residents contracted with defendants instead of StrivePath because of the redirection.  (Compl't ¶¶ 14, 36, 41–42.)  This argument fails for several reasons.  First, StrivePath fails to plausibly allege that the redirection of web traffic via the strivepath.com domain constitutes a transaction of business as understood in section 302(a)(1).[4]  As with its allegations regarding defendants' websites, StrivePath does not allege that strivepath.com had any interactive features, that defendants used that website to conduct transactions with New York residents, or that it was otherwise purposefully directed to New York.  See Warner Bros. Ent. Inc. v. Ideal World Direct, 516 F. Supp. 2d 261, 267 (S.D.N.Y. 2007) (Pauley, J.) (no personal jurisdiction over defendant under section 302(a)(1) for operation of passive website that redirected visitors to another website); see also LeafFilter N., LLC v. Home Craft Builders, Inc., 487 F. Supp. 3d 643, 649–50 (N.D. Ohio 2020) (use of website with similar name as plaintiff entity to redirect web traffic to defendant's website did not constitute purposeful availment because website was passive in nature).

Moreover, defendant Brooke Daly has stated under penalty of perjury that ACP and ACPF received no inquiries from potential customers or franchisees from New York on or after January 21, 2025, the first date on which defendants initiated the redirect.  (ECF 41, B.

---

[4] In its submissions, StrivePath makes no reference to the subsections of section 302(a) other than 302(a)(1).

Daly Decl. ¶ 13.)  StrivePath has not countered that assertion with facts.  It may not rely on vague and conclusory allegations in the Complaint that "[u]pon information and belief, a significant number of customers, some of which were residents of New York, encountered the Infringing Domain, the redirection to Defendants' websites, and therefore . . . Defendants' services" and that "[u]pon information and belief, an unknown number of customers, some of which were residents of New York, contracted with Defendants for the provision of services identical to Plaintiff's based on Defendants' intentional, willful, deceit."  (Compl't ¶¶ 41–42.) "[W]here a plaintiff advances only conclusory allegations to contradict defendant's specific averments or evidence refuting jurisdiction, such allegations will not suffice to create the necessary *prima facie* showing that the court may exercise personal jurisdiction." Creative Photographers, 763 F. Supp. 3d at 632 n.9 (citing In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 676–78 (2d Cir. 2013)); see also Minden Pictures, 738 F. Supp. 3d at 465 ("[P]laintiff cannot rest on [certain] allegations in its amended complaint . . . to establish personal jurisdiction" because the allegations were "directly refuted by" a declaration submitted by the defendant). StrivePath has not established that defendants transacted any business with New York residents stemming from the redirect.  Cf. Birdie Girl Golf, LLC v. Many Hats Enters., LLC, 24-cv-9425 (LJL), 2026 WL 158786, at *4 (S.D.N.Y. Jan. 21, 2026) (Liman, J.) (exercising personal jurisdiction over defendant who redirected web traffic from allegedly infringing domain to its own website where "Defendant made numerous sales in New York during the relevant time period" and "Defendant could not exclude the possibility that at least one of those numerous sales came about as a result of [the] redirect . . . .").  StrivePath has thus failed to establish that personal jurisdiction on the basis of the redirect would be proper under section 302(a)(1).

StrivePath also suggests that defendants likely had contacts with New York residents because New York is home to many prestigious universities and colleges and thus defendants likely have cultivated relationships with New York educational institutions and their employees. (See ECF 44, Grewal Decl. ¶ 32–33.) Assuming that conduct establishes that defendants "transacted business" in New York, StrivePath fails to explain how such conduct bears any nexus to its claims. Again, all of StrivePath's claims arise out of defendants' registration of the strivepath.com domain name and the redirection of web traffic from that site to defendants' own website. This alleged conduct has, "at best, a tangential relationship" to defendants' purported development of relationships with colleges and universities in New York and their employees and thus fails to support the exercise of personal jurisdiction over defendants. Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 104 (2d Cir. 2006).

Finally, in its opposition to the motion dismiss, StrivePath glancingly refers to defendants' declaration that only four of defendants' clients from the last five years were New York residents. (See ECF 41, B. Daly Decl. ¶ 5.) StrivePath is correct that defendants' provision of services to New York residents means that defendants "transacted business" in New York. And that is the case even though, as defendants attested, those four individuals constituted a very small portion of defendants' clients over the last five years and despite defendants' provision of consulting services to those clients outside of New York via remote means. See, e.g., Chloé, 616 F.3d at 169–70 (noting that "a defendant need not be physically present in New York to transact business there within the meaning of the first clause of section 302(a)(1)" and that "the second clause of section 302(a)(1) provides for jurisdiction where the defendant has only 'minimal contacts' with New York but contracts to deliver . . . services to the state").

But StrivePath fails to set out "an articulable nexus or substantial relationship" between the provision of services to these four New York consulting clients and its claims. Licci, 20 N.Y.3d at 339 (internal quotation marks and citations omitted).  Defendants specifically state that none of the four clients were obtained from marketing efforts by ACP in New York and that defendants received no inquiries from New York residents following the redirect of web traffic from strivepath.com to defendants' website.  (ECF 41, B. Daly Decl. ¶¶ 5, 13.)  Indeed, in trademark infringement and cybersquatting cases, courts deem section 302(a)(1)'s nexus requirement satisfied when plaintiffs plausibly allege that some of defendants' sales to the forum state were the result of or affected by the alleged infringement.  See, e.g., Birdie Girl Golf, 2026 WL 158786, at *4 (nexus requirement of section 302(a)(1) satisfied because "Defendant made numerous sales in New York during the relevant time period" and "Defendant could not exclude the possibility that at least one of those numerous sales came about as a result of [the] redirect" from an infringing domain to defendant's website); Energy Brands, 571 F. Supp. 2d at 470 (nexus requirement of section 302(a)(1) satisfied where "plaintiff allege[d] that . . . sales [to New Yorkers over the internet] were potentially diverted from it as a result of consumer confusion and the products sold in New York bore the trade dress at issue").  Because StrivePath does not offer anything on this point but conclusory allegations that are contradicted by defendants' specific averments, StrivePath has failed to make out a prima facie case in favor of the exercise of personal jurisdiction on this basis.  See Creative Photographers, 763 F. Supp. 3d at 632 n.9.

Because the defendants' business transactions in New York have no articulable nexus to StrivePath's claims based on the redirection of web traffic from the Infringing Website to defendants' website, StrivePath has failed to make a prima facie showing in support of the Court's exercise of personal jurisdiction over defendants.

4.  Due Process Considerations.

Because StrivePath has not made a prima facie showing of personal jurisdiction over defendants under the long-arm statute, the Court need not determine whether the exercise of jurisdiction would comport with due process.  See Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 35 (2d Cir. 2010) ("[A]nalysis under Due Process principles is not necessary unless there is long-arm jurisdiction under the applicable state statute."); see also Chalfin v. Go Big Solar, LLC, 24-cv-4768 (KPF), 2025 WL 2022012, at *10 (S.D.N.Y. July 17, 2025) (Failla, J.) ("[W]here there is no statutory basis for personal jurisdiction under New York law, 'the Court need not reach the question of whether the exercise of jurisdiction comports with due process.'") (quoting Edwardo v. Roman Cath. Bishop of Providence, 579 F. Supp. 3d 456, 476 (S.D.N.Y. 2022) (Failla, J.))).

II.  The Court Declines StrivePath's Request to Amend the Complaint or to Permit Jurisdictional Discovery.

In its opposition to defendants' motion to dismiss, StrivePath requests that the Court permit it to amend its Complaint to incorporate factual averments made by the Daly defendants in their declarations submitted with the motion to dismiss.  In the alternative, StrivePath requests that the Court permit it to conduct jurisdictional discovery so that it may resolve any questions that remain about whether personal jurisdiction would be proper.

StrivePath has already had ample opportunity to amend its Complaint in response to defendants' arguments that they were not subject to personal jurisdiction in New York. Shortly after StrivePath filed its initial complaint, defendants submitted a letter outlining the basis for its proposed motion to dismiss for lack of personal jurisdiction.  (ECF 22.)  That letter contained substantially the same arguments defendants assert in their motion to dismiss.

StrivePath responded to that letter, asserting that defendants' proposed motion was without merit but alternatively seeking leave to amend its Complaint. (ECF 23.) The Court granted StrivePath leave to amend. (ECF 24.) It then filed its First Amended Complaint. (ECF 26.)

Defendants then submitted a second letter again asserting that the First Amended Complaint did not support the exercise of personal jurisdiction over any defendant and addressing StrivePath's claims regarding the webpage and the location of the Buffalo franchise. (ECF 29.) As confirmed by the minute entry from July 17, 2025, the Court offered StrivePath the opportunity to further amend the First Amended Complaint in response to the second pre-motion letter, but it declined to do so. (Minute Entry of July 17, 2025.)

Apart from StrivePath's foregoing of a further opportunity to amend, its purported amendments fail on futility grounds. With its opposition to the motion to dismiss, StrivePath also submitted a proposed Second Amended Complaint ("SAC"). (ECF 43-1.) The proposed SAC alleges that "[u]pon information and belief . . . Defendants exerted such control over the business location in Buffalo, New York as to eliminate any independent operations of the Buffalo location and render it nothing more than an extension of Defendants' business operations." (ECF 43-1 at 4.) The proposed SAC contains the conclusory allegation devoid of detail that "Defendants have rendered services to multiple residents of the State of New York." (Id.) The allegation does not explain whether it is premised upon statements in the Brooke Daly declaration quoted above or on its "upon information and belief" allegation concerning the Buffalo franchisee "as an extension of Defendants' business operations." Similarly, the proposed SAC states that, "[u]pon information and belief, Defendants have cultivated and maintained business relationships with educational establishments located in the State of New York." (Id. at 5.)

- 20 -

The proposed amendments mirror the arguments already advanced by StrivePath and rejected herein. As noted, the Complaint fails to plausibly allege that StrivePath's claims "arise from" defendants' operation of the Buffalo location of ACP, even assuming that the Buffalo location is a mere agent of the defendants. The Complaint similarly fails to plausibly allege that defendants' supposed relationships with New York colleges and universities relate in any way to StrivePath's claims. And the additional proposed allegations regarding defendants' New York clients also fail to show any relationship to the redirection of web traffic that is at the core of StrivePath's claims. Because "it appears that plaintiff cannot address the deficiencies identified by the court," further amendment would be futile and the Court denies StrivePath's request to further amend the Complaint. Panther Partners Inc. v. Ikanos Commc'ns, Inc., 347 F. App'x 617, 622 (2d Cir. 2009).

The Court will also deny StrivePath's request for jurisdictional discovery. "A district court has wide latitude to determine the scope of discovery, . . . and is typically within its discretion to deny jurisdictional discovery when the plaintiff [has] not made out a prima facie case for jurisdiction." Daou v. BLC Bank, S.A.L., 42 F.4th 120, 133 n.6 (2d Cir. 2022) (alterations in original) (quoting Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic, 582 F.3d 393, 401 (2d Cir. 2009)); see also Best Van Lines, 490 F.3d at 255; Reed Int'l, Inc. v. Afghanistan Int'l Bank, 657 F. Supp. 3d 287, 298 (S.D.N.Y. 2023) (Ramos, J.) ("[J]urisdictional discovery is generally not granted" when the plaintiff "has failed to establish a prima facie case for personal jurisdiction." (quoting RSM Prod. Corp. v. Fridman, 643 F. Supp. 2d 382, 402 (S.D.N.Y. 2009) (Wallach, J.))). Based upon StrivePath's flawed theory of personal jurisdiction, the Court is unable to "conclude[] that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." Birdie Girl Golf, LLC v.

Many Hats Enters., LLC, 24-cv-9425 (LJL), 2025 WL 2391072, at *10 (S.D.N.Y. Aug. 18, 2025) (Liman, J.) (quoting Regenlab USA LLC v. Estar Techs. Ltd., 16-cv-08771 (ALC), 2017 WL 3601304, at *4 (S.D.N.Y. Aug. 17, 2017) (Carter, J.)).  The Court thus declines to permit jurisdictional discovery.  StrivePath has also not provided any non-speculative basis to conclude that the jurisdictional discovery it proposes would be anything other than a fishing expedition.

StrivePath's requests to further amend the Complaint and to conduct jurisdictional discovery will be denied.

III. The Court Does Not Reach the Question of Whether Venue is Improper.

Defendants also argue that the action should be dismissed for improper venue under Rule 12(b)(3), Fed. R. Civ. P.  The Court need not reach the defendants' motion to dismiss on this ground because it has already determined that there is no personal jurisdiction over defendants.  Donner v. DER SPIEGEL Gmbh & Co. KG, 747 F. Supp. 3d 681, 694 (S.D.N.Y. 2024) (Koeltl, J.), aff'd, 24-2654-cv, 2025 WL 2985764 (2d Cir. Oct. 23, 2025); see also Kaplan Grp. Invs. LLC v. A.S.A.P. Logistics Ltd., 694 F. Supp. 3d 374, 385 (S.D.N.Y. 2023) (Oetken, J.) (finding that court lacked personal jurisdiction over defendants and declining to reach other grounds for dismissal, including improper venue).

IV. The Court Declines to Transfer the Action.

Section 1631 provides that if the "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631.  Defendants ask that, in the event the Court finds that it lacks

personal jurisdiction, the Court either dismiss or transfer the action to the Eastern District of North Carolina pursuant to 28 U.S.C. § 1631. StrivePath, well aware of the motion to dismiss and the defendants' alternative request for transfer, has remained silent on the subject.

Transfer pursuant to section 1631 may be used "only to cure lack of subject matter jurisdiction," not personal jurisdiction. SongByrd, Inc. v. Est. of Grossman, 206 F.3d 172, 179 n.9 (2d Cir. 2000). Instead, the Circuit has stated that courts ought to consider its "authority derived from either section 1406(a) or section 1404(a)" to transfer an action when the court determines it lacks personal jurisdiction over the defendants. Id. (citing 28 U.S.C. §§ 1404(a), 1406(a)). And indeed, some courts in this Circuit have converted motions to transfer improperly made under section 1631 to those under sections 1404(a) and 1406(a). See e.g., Thompson v. PF Chang's China Bistro, Inc., 18-cv-186 (MPS), 2018 WL 3241356, at *4–5 (D. Conn. July 3, 2018) (analyzing whether to transfer case under section 1406(a) after determining court lacked personal jurisdiction over defendant); Yurasov-Lichtenberg v. Betz, 15-cv-1430 (RRM) (MDG), 2016 WL 4544031, at *7–8 (E.D.N.Y. Aug. 30, 2016) (transferring case pursuant to section 1404(a) after determining court lacked personal jurisdiction over defendants); but see M. Shanken Commc'ns, Inc. v. Variant Events, LLC, 10-cv-4747 (CM), 2010 WL 4159476, at *9 (S.D.N.Y. Oct. 7, 2010) (McMahon, J.) (analyzing transfer pursuant to section 1631 after finding the court lacked personal jurisdiction over defendants, without citing the SongByrd decision); Moscato v. MDM Grp., Inc., 05-cv-10313 (KMW), 2008 WL 2971674, at *5 (S.D.N.Y. July 31, 2008) (Wood, J.) (same); Sabatino v. St. Barnabas Med. Ctr., 03-cv-7445 (CSH), 2005 WL 2298181, at *3 (S.D.N.Y. Sept. 20, 2005) (Haight, J.) (same).

Regardless of whether the Court analyzes transfer under section 1631, section 1404(a), or section 1406(a), the Court will decline to transfer the action. Defendants' alternative request for transfer is moot and plaintiff has advanced no reasons for transfer.

The motion to transfer venue as an alternative to dismissal is denied.


CONCLUSION.

Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED. Defendants' request for the alternative relief of transfer is DENIED as moot. StrivePath's requests for leave to amend, for jurisdictional discovery, and for all other relief are DENIED. The motions at ECF 39 & 46 should be terminated.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
        March 19, 2026